UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAY LEE RAMSEY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 4:14-CV-1238 CAS / DDN |
| ) | |
| JEFF NORMAN, ) | |
| ) | |
| Respondent. ) | |

## REPORT AND RECOMMENDATION

This action is before the court upon the petition of Missouri state prisoner Jay Lee Ramsey for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) The matter was referred to the undersigned United States Magistrate Judge for a report and recommended disposition pursuant to 28 U.S.C. § 636(b) (1). For the reasons set forth below, the undersigned recommends the denial of the petition for a writ of habeas corpus.

## I. BACKGROUND

In June 2011, the State of Missouri charged petitioner with first degree domestic assault for running over the victim, his wife, with a vehicle. (Resp't Ex. F at 4, 66.) After his arrest, petitioner entered into a plea agreement with the State, where the State recommended a sentence of seven years in prison with the possibility of release on probation after 120 days, in exchange for a guilty plea. (Id. at 66) The recommendation was contingent on petitioner receiving a favorable report from the Department of Corrections (DOC) at the end of the 120 days, pursuant to Mo. Rev. Stat. § 559.115. (Id. at 66.) Petitioner pled guilty to first degree domestic assault and the Circuit Court of New Madrid County sentenced him according to the terms of the plea agreement. (Id. at 66–68.)

After serving 120 days, the petitioner received an unfavorable report from the DOC. (Id. at 6–9.) Based on the report, the circuit court did not release petitioner on probation and ordered that he serve the remainder of his seven year sentence. (Id. at 12.)

On January 27, 2012, petitioner filed a pro se motion in the circuit court for post-conviction relief under Missouri Supreme Court Rule 24.035. (Id. at 32–43.) On June 28, 2012, with the assistance of appointed counsel petitioner filed an amended motion for post-conviction relief in the circuit court and requested an evidentiary hearing. (Resp. Ex. D.)

The court held an evidentiary hearing on December 5, 2012. At the hearing petitioner testified on his own behalf and called Sarah Ramsey, his wife and the victim in the underlying criminal case, as a witness. On January 7, 2013, the circuit court issued written findings of fact and conclusions of law, and denied petitioner's motion. (Resp. Ex. E.)

Petitioner appealed to the Missouri Court of Appeals, which on April 23, 2014, affirmed the decision of the circuit court. (Resp. Ex. I.)

On July 10, 2014, petitioner filed the instant federal petition for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.)

The Missouri Court of Appeals described the facts viewed most favorably to the verdict, as follows:

> In June 2011, Ramsey was charged by information with domestic assault in the first degree. See § 565.072. The information alleged that: (1) Ramsey ran over his wife, S.R. (Victim), with a vehicle; (2) such action was a substantial step toward an attempt to kill or cause serious physical injury to Victim; and (3) such action was done for the purpose of committing the assault.
>
> Thereafter, a plea agreement was reached. In exchange for Ramsey's guilty plea, the prosecutor agreed to recommend a seven-year sentence in the Department of Corrections (DOC) with a possible release on probation after 120 days pursuant to § 559.115, provided Ramsey receive a favorable recommendation from the DOC. [1]

---

[1] The Missouri Court of Appeals included the following footnote at this location: "In relevant part, this statute authorizes the trial court 'to grant probation to an offender anytime up to one

In August 2011, a plea hearing was held. Ramsey told the court that: (1) it was his decision to plead guilty after consulting with his attorney; (2) he understood that he faced a range of punishment of between five and fifteen years; (3) he understood that he did not have to plead guilty; (4) he understood all of his constitutional rights attendant with a trial; (5) he was satisfied with the legal representation his attorney had provided him; and (6) his attorney had done everything that Ramsey asked of him. After the court read the charge, Ramsey admitted that he committed the act and was guilty of the charge.

The prosecutor then recommended that the court: (1) impose a seven-year sentence; (2) retain jurisdiction for 120 days pursuant to § 559.115; and (3) place Ramsey on supervised probation for five years if he received a favorable recommendation from the DOC. Ramsey testified that he understood the prosecutor's recommendation. The following colloquy between the judge and Ramsey then occurred:

> THE COURT: And, do you understand that your release from the Department of Corrections within 120 days is basically gonna be conditioned upon one thing, number one, that you just get a favorable recommendation for that release. In other words, you're gonna be, part of the commitment papers will be that your sentencing will be pursuant to Chapter 559.115 which means the D.O.C. will provide the Court with a progress report and a recommendation for a 120-days release, and, upon the Court receiving a favorable recommendation, that you'll be released and placed on probation for a period of five years; do you understand that?
>
> THE DEFENDANT: Yes, sir.

Ramsey asked the court to accept his guilty plea and follow the prosecutor's recommendation.

The court accepted Ramsey's guilty plea and found that it had been made freely and voluntarily with a full understanding of the plea's consequences. The court imposed a seven-year sentence in the DOC,

---

hundred twenty days after such offender has been delivered to the department of corrections but not thereafter. The court may request information and a recommendation from the department concerning the offender and such offender's behavior during the period of incarceration. Mo. Rev. Stat. § 559.115.2.'"

requested a progress report and recommendation from the DOC, and expressed an intention to release Ramsey on probation for five years if he received a favorable recommendation for release. Ramsey then stated under oath that: (1) he had ample opportunity to discuss his case with counsel before pleading guilty; and (2) neither defense counsel nor anyone else had communicated any threats or promises to Ramsey to make him plead guilty.

Following an unfavorable report from the DOC, the court decided not to place Ramsey on probation. Ramsey then timely filed a *pro se* motion for post-conviction relief pursuant to Rule 24.035. Appointed counsel filed an amended motion. This motion alleged that Ramsey's plea was not knowingly, voluntarily and intelligently entered because his plea attorney, Michael Sato (Sato), was ineffective in two respects. The motion alleged that Sato: (1) failed to speak with Victim and thereby failed to investigate the facts and circumstances surrounding the case; and (2) failed to explain the "ramification" of a plea under the provisions of § 559.115. As a result Ramsey alleged that he misunderstood the terms of his plea agreement and its attendant circumstances. Following an evidentiary hearing, the motion court denied Ramsey's amended Rule 24.035 motion. This appeal followed. Additional facts will be included below as we address Ramsey's two points on appeal.

…

At the evidentiary hearing, Ramsey testified that he asked Sato to speak with Victim because Ramsey "figured she would tell him it was an accident – a car accident." Ramsey testified that Sato did not follow through with his request. Ramsey did not testify, however, that he would have insisted on going to trial if Sato had interviewed Victim and she had described the incident as an accident. Sato testified that he communicated the prosecution's plea offer to Ramsey. According to Sato, Ramsey said that "he just wanted to take the 120-day offer and that he didn't want to go through a trial." In denying this claim, the motion court found, *inter alia*, that Ramsey failed [to] prove he was prejudiced by any errors or omissions of his attorney.

Ramsey argues Sato was ineffective for failing to speak with Victim. If he had done so, Ramsey contends Sato would have learned that Victim had recanted her original statement to law enforcement officers. Ramsey then argues that "[b]ut for Mr. Sato's failure to speak with [Victim], [Ramsey] would not have plead guilty and would have insisted on proceeding to trial." We find no merit in this argument.

…

Sato testified that Ramsey wanted to plead guilty and did not want to go to trial. Ramsey provided no contrary testimony. Therefore, Ramsey failed to present any evidence that he would have insisted on going to trial if Sato had interviewed Victim. Consequently, Ramsey failed to prove he was prejudiced by Sato's allegedly deficient performance. . . . Ramsey therefore failed to meet his burden of proving he received ineffective assistance of plea counsel on his first claim.

…

Ramsey's second point contends the motion court clearly erred in denying his Rule 24.035 motion for post-conviction relief because plea counsel Sato was ineffective for failing to explain the ramifications of Ramsey's plea to him.

At the evidentiary hearing, Ramsey testified that after his guilty plea, he believed that he would be released after 120 days. Ramsey claimed that Sato told him this on the day he pleaded guilty and that this alleged promise played "a big part' in his decision to plead guilty. Ramsey further claimed that he was unaware of the possibility that he could be denied a release after 120 days and that Sato failed to explain this to him. Ramsey denied that at the time of the plea, he understood his release would be based only on the condition that he receive a favorable recommendation from the DOC. He believed he would be released if he stayed out of trouble. Although Ramsey claimed that he "stayed out of trouble" during his first 120 days in the DOC, he admitted that he accrued a conduct violation during that time.

Sato testified that he reviewed the plea agreement with Ramsey at the plea hearing. Sato believed that Ramsey understood the deal and how the 120-day release worked. Sato explained that the 120-day release was largely dependent on Ramsey's conduct in the DOC and that the judge would ultimately make the decision regarding whether or not to release Ramsey on five year's probation. Sato also explained to Ramsey that, if he did not get a favorable recommendation, it was possible he would not be released on probation. Ramsey seemed to understand this. Sato believed that the plea agreement reached with the State protected Ramsey from a "worst-case scenario."

In the motion court's findings of fact and conclusions of law, the court found that "[i]t was well documented throughout the transcript of the plea, and through the testimony of [Ramsey] and Michael Sato, that [Ramsey] was fully advised as to what a 559.115 sentence entailed." The court further found that Ramsey was advised that upon a favorable

- 5-

recommendation, he would be released on probation, and that upon receiving an unfavorable recommendation, he would not be released. The court therefore determined that Ramsey failed to meet his burden of proving that his counsel had guaranteed that Ramsey would be released after 120 days. The court denied Ramsey's claim, explaining that Ramsey failed to prove that counsel's representation fell below an objective standard of reasonableness or that his counsel's performance failed to conform to the degree of skill, care and diligence of a reasonably competent attorney.

Ramsey argues that Sato was ineffective for failing to explain the ramifications of being sentenced pursuant to § 559.115, and therefore Ramsey held a "mistaken belief" about a possible 120-day release on probation. "But for this mistaken belief," he argues he would have insisted on proceeding to trial. Again, we find no merit in Ramsey's argument.

The motion court decided that Ramsey's testimony about his "mistaken belief" as to his understanding about the 120-day program was simply not credible. The motion court was free to believe or disbelieve any evidence, whether contradicted or undisputed, including Ramsey's testimony. Ramsey's testimony was refuted both by the plea transcript and Sato's testimony. The motion court obviously believed Ramsey's testimony at the guilty plea hearing and Sato's testimony at the evidentiary hearing. We defer to those credibility determinations. (citations omitted).

(Resp. Ex. I at 2-9) (citations omitted).

## II. PETITIONER'S GROUNDS FOR HABEAS RELIEF

Petitioner claims four grounds for relief in this habeas action:

(1)     Plea hearing counsel was constitutionally ineffective for failing to subpoena Ms. Sarah Ramsey, the complaining victim.

(2)     Plea hearing counsel was constitutionally ineffective for failing to explain the "ramifications" of the plea agreement.

(3)     The court failed to explain the terms of the plea agreement, including the actual charge against him.

(4)     Missouri's shock incarceration statute, Mo. Rev. Stat. § 559.115, is void for vagueness.

(Doc. 1 at 5–12.)

Respondent contends that all of petitioner's federal grounds for relief are without merit. Respondent further contends that Grounds 3 and 4 are procedurally barred because petitioner failed to raise either of them during post-conviction relief proceedings or on direct appeal in state court. (Doc. 7 at 6–13.) Respondent does not argue that any ground is time-barred.

### III. EXHAUSTION AND PROCEDURAL BAR

Congress requires that state prisoners exhaust their state law remedies for claims made in federal habeas corpus petitions filed in district court. See 28 U.S.C. § 2254(b)(1)(A). A state prisoner has not exhausted his remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). As discussed above, petitioner filed a motion for post-conviction relief, and appealed the denial of his motion for post-conviction relief.

Exhaustion in the sense that petitioner now has no remaining procedure for bringing a claim to the state court does not satisfy the federal statutory requirement. Instead, a petitioner must have fairly presented the substance of each federal ground to the trial and appellate courts. Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam). If he has not done so and has no remaining procedure for doing so because he has defaulted on the legitimate requirements of the otherwise available procedures, any such ground for federal habeas relief is barred from being considered by the federal courts. Grass v. Reitz, 643 F.3d 579, 584 (8th Cir. 2011); King v. Kemna, 266 F.3d 816, 821 (8th Cir. 2001) (en banc); Sweet v. Delo, 125 F.3d 1144, 1149–50 (8th Cir. 1997) (petitioner's failure to present a claim on appeal from a circuit court ruling raises a procedural bar to pursuing the claim in a habeas action in federal court). The doctrine of procedural bar applies whether the default occurred at trial, on appeal, or during state court collateral attack. See Murray v. Carrier, 477 U.S. 478, 490–92 (1986).

Here, petitioner raised all four grounds in his *pro se* motion to vacate, set aside or correct the judgment or sentence. (Resp. Ex. C.) However, in the amended motion

written with counsel's assistance, petitioner raised only Grounds 1 and 2. (Resp. Ex. D.) In his appeal to the Missouri Court of Appeals petitioner raised only Grounds 1 and 2. (Resp. Ex. G at 6; Resp. Ex. J at 73-74.) Accordingly, Grounds 3 and 4 are procedurally barred because petitioner failed to present them in his post-conviction relief motion or on direct appeal to the state appellate court.

A petitioner may avoid the procedural bar by demonstrating either that there is a legally sufficient cause for the default and actual prejudice resulting from it, or that failure to review the claim would result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). To establish cause for a procedural default, petitioner must demonstrate that some objective factor external to his case impeded his efforts to comply with the state procedural requirements. Id. at 750-52. To establish actual prejudice, petitioner must demonstrate that the alleged errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999) (internal citations omitted); see also Charron v. Gammon, 69 F.3d 851, 858 (8th Cir. 1995) (stating that the standard of prejudice to overcome procedural default "is higher than that required to establish ineffective assistance of counsel under Strickland"). Petitioner does not argue against procedural bar.

Nevertheless, if this court concludes that the procedurally barred grounds are without merit, Congress has authorized it to consider and to dismiss them. 28 U.S.C. § 2254(b)(2). The undersigned has considered all of petitioner's federal grounds on their merits and concludes that they are without merit.

## IV. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires that habeas relief may not be granted to a state prisoner by a federal court on a claim that has been decided on the merits by a state court unless that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1)-(2).

A state court's decision is contrary to clearly established federal law if it "arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." Thaler v. Haynes, 559 U.S. 43, 47 (2010) (per curiam) (citation omitted). This standard is difficult to meet because habeas corpus "is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Harrington v. Richter, 562 U.S. 86, 102–03 (2011) (citation omitted). A state court's decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Thaler, 559 U.S. at 47.

A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); Wood v. Allen, 558 U.S. 290, 293 (2010). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). Clear and convincing evidence that factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); Wood, 558 U.S. at 293.

## V. DISCUSSION

### A. Ground 1

In Ground 1, petitioner claims that his plea hearing counsel rendered constitutionally ineffective assistance for failing to subpoena and interview Ms. Sarah

Ramsey, the complaining victim in the case. In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court defined ineffective assistance of counsel as arising under the Sixth and Fourteenth Amendments. Under Strickland, a petitioner is entitled to federal habeas corpus relief upon a showing that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686.

Petitioner must establish two elements to prevail on a claim of ineffective assistance of counsel. First, he must demonstrate that his plea counsel's performance fell below an objective standard of reasonableness. Id. at 687–88. There is a strong presumption that counsel has rendered constitutionally effective assistance. Id. at 690; Blackmon v. White, 825 F.2d 1263, 1265 (8th Cir. 1987). Counsel's strategic choices made after thorough investigation are virtually unchallengeable, and decisions following reasonable, but less thorough, investigation are to be upheld to the extent that they are supported by reasonable judgment. Strickland, 466 U.S. at 690–91.

Second, petitioner must demonstrate that he was actually prejudiced by plea counsel's deficient performance. Id. at 687. To show prejudice, petitioner must establish that counsel's professionally deficient performance rendered the outcome of the proceeding unreliable or fundamentally unfair, and that the decision reached would reasonably likely have been different absent the errors, and in this case that petitioner would not have pled guilty but would have insisted on going to trial. Id. at 687, 696; Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993). The prejudice must not be simply a "possibility" but an "actual and substantial disadvantage, infecting [petitioner's] entire [proceeding] with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982).

At the state court evidentiary hearing, petitioner testified that he asked his counsel to interview the victim because he "figured she would tell him it was an accident – a car accident." (Resp. Ex. I at 5.) Petitioner further testified that counsel did not follow this request. (Id.) However, petitioner did not testify or present any other evidence that he would have insisted on going to trial if counsel had interviewed the victim and if she had

described the event as an accident. (Id. at 5–6.) Counsel testified that he explained the terms of the plea agreement to petitioner and that petitioner expressed a desire to take the plea and avoid trial. (Id. at 6.)

Considering these facts, the appellate court found and concluded that petitioner failed to present evidence that he would have gone to trial, even if counsel had interviewed the victim. (Id.) Accordingly, the appellate court determined that petitioner failed to establish the prejudice element of the Strickland test, and thus failed to show that his counsel was constitutionally ineffective.

Considering the aforementioned testimony and the facts of petitioner's case, the undersigned concludes that the state court reasonably applied the Strickland analysis when it found that petitioner was not prejudiced by trial counsel's performance.

Thus, ground 1 is without merit.

**B. Ground 2**

In Ground 2, petitioner alleges that his plea counsel was ineffective for failing to explain the "ramifications" of the guilty plea agreement. By this, petitioner contends that his counsel was ineffective for failing to explain the terms of the guilty plea to him and the possibility that he would not be released on probation after serving 120 days.

At the evidentiary hearing, petitioner testified that he believed that he would be released after 120 days. Petitioner further testified that his counsel conveyed this to him on the day he pled guilty and that it was a large part in his decision to plead guilty. Petitioner testified that he was unaware of the possibility that he could be denied release after 120 days because his counsel failed to explain the terms of the plea agreement to him. Petitioner further denied that at the time of plea he understood that his release would be conditioned on receiving a favorable recommendation from the DOC. He believed that he would be released if he "stayed out of trouble" and that he had stayed out of trouble, although he admitted he accrued a conduct violation during that time. (Resp. Ex. I at 7.)

Trial counsel testified that he reviewed the plea agreement with petitioner at the plea hearing. Counsel explained that the release would be dependent on petitioner's conduct in the DOC and that the judge would ultimately make the decision about whether to release him on probation after serving 120 days. Moreover, counsel testified that he explained to Ramsey that if he did not get a favorable recommendation, it was possible that he would not be released on probation. Counsel testified that he believed that petitioner understood the terms of the agreement and how his release on probation would work. Counsel believed that this course of action would protect petitioner from a "worst-case scenario." (Id. at 7-8.)

Based on the underlying facts and evidence on the record, the appellate court found that petitioner failed to meet his burden of proving that his counsel guaranteed that petitioner would be released after 120 days. The appellate court found that throughout the plea hearing and the evidentiary hearing, it was well-documented on the record that petitioner was fully advised as to his sentence and the terms of the plea agreement. Petitioner was well advised that his release would be conditioned on receiving a favorable recommendation from the DOC, and that his release after 120 days was not guaranteed. Moreover, the appellate court deferred to the circuit court's finding that petitioner was not credible when he claimed that he would have gone to trial if counsel had informed him of the ramifications of the plea agreement. The appellate court also found that petitioner's testimony was refuted by the plea transcript and counsel's testimony at the evidentiary hearing. Thus, the court concluded that petitioner failed to establish that counsel's performance was deficient. (Id. at 7-9.)

Considering that state courts' credibility determinations are presumptively correct under 28 U.S.C. § 2254(e)(1), and the lack of other evidence supporting petitioner's allegations of deficient performance, the undersigned concludes that the Missouri courts reasonably applied federal law.

Accordingly, Ground 2 is without merit.

**C. Ground 3**

In his third federal ground, petitioner argues that the state trial court failed to explain to him the charge against him and the terms of the guilty plea agreement, specifically that the court failed to advise him that his probationary release was conditioned on receiving a favorable report from the DOC.

The evidence shows that at the plea hearing, the state trial court explicitly stated charge against petitioner and the conditions of the guilty plea agreement. Among other statements, the following colloquy occurred:

THE COURT: Now I am going to read the charge to you, Mr. Ramsey.

> "It has been charged by the state of Missouri that on or about June 8, of 2011, in the county of New Madrid, state of Missouri, that you ran over Sarah Ramsey with a vehicle, and such conduct was a substantial step toward the commission of the crime of attempting to kill or cause serious physical injury to Sarah Ramsey. And, was done for the purpose of committing such assault, and, Sarah Ramsey and you were family or household members, in that Sarah Ramsey is your spouse."

Now, do you understand this charge of domestic assault in the first degree that I just read to you?

THE DEFENDANT: Yes.

THE COURT: And, is that the charge that you [want] to plead guilty to here today?

THE DEFENDANT: Yes, sir.

THE COURT: And by pleading guilty to this charge, are you admitting to the Court you committed this act?

THE DEFENDANT: Yes, sir.

THE COURT: And, by pleading guilty to this charge, are you telling the Court that you are in fact guilty of this crime?

THE DEFENDANT: Yes, sir.

> THE COURT: And, do you understand that your release from the Department of Corrections within 120 days is basically gonna be conditioned upon one thing, number one, that you just get a favorable recommendation for that release. In other words, you're gonna be, part of the commitment papers will be that your sentencing will be pursuant to Chapter 559.115 which means the D.O.C. will provide the Court with a progress report and a recommendation for a 120-days release, and, upon the Court receiving a favorable recommendation, that you'll be released and placed on probation for a period of five years; do you understand that?
>
> THE DEFENDANT: Yes, sir.

(Resp. Ex. A at 17-18, 19-20.)

The court clearly stated that charge against petition and he indicated having no difficulty understanding the charge. The court also explained the terms of the plea agreement and specified that his release would be conditioned on a satisfactory report from the DOC. Additionally, petitioner responded in the affirmative that he understood the terms of his release on probation. Petitioner's third claim is factually unsupported by the record.

Accordingly, ground 3 is without merit.

**D. Ground 4**

In Ground 4, petitioner alleges that Missouri's shock incarceration statute, Mo. Rev. Stat. § 559.115, is void for vagueness. "Under the vagueness doctrine, a penal statute must define the prohibited conduct 'with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Neely v. McDaniel, 677 F.3d 346, 350 (8th Cir. 2012) (quoting Kolender v. Lawson, 461 U.S. 352, 357 (1983)). "[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." United States v. Washam,

312 F.3d 926, 929 (8th Cir. 2002) (quoting United States v. Mazurie, 419 U.S. 544, 550 (1975)).

The shock incarceration statute is not void for vagueness, because the statute clearly establishes how a sentenced prisoner is placed in the program and how a court determines if he is eligible for probation. In pertinent part, the statute states:

> 3. The court may recommend placement of an offender in a department of corrections one hundred twenty-day program . . . . [W]hich may include placement in the shock incarceration program or institutional treatment program. When the court recommends and receives placement of an offender in a department of corrections one hundred twenty-day program, the offender shall be released on probation if the department of corrections determines that the offender has successfully completed the program except as follows. . . . The court shall follow the recommendation of the department unless the court determines that probation is not appropriate. If the court determines that probation is not appropriate, the court may order the execution of the offender's sentence only after conducting a hearing on the matter within ninety to one hundred twenty days from the date the offender was delivered to the department of corrections. If the department determines the offender has not successfully completed a one hundred twenty-day program under this subsection, the offender shall be removed from the program and the court shall be advised of the removal. The department shall report on the offender's participation in the program and may provide recommendations for terms and conditions of an offender's probation. The court shall then have the power to grant probation or order the execution of the offender's sentence.

Mo. Rev. Stat. § 559.115.

Under the statute, it is clear that the Department of Corrections determines whether the prisoner has successfully completed the program. If the DOC determines that the offender has not successfully completed the program, the prisoner is removed from the program and the department advises the court of his removal. The department provides the court with a report, which the court uses to grant probation or order the execution of the sentence. See id.

Here, the court and the DOC followed the procedures outlined in the statute. Petitioner was advised of the conditions of his release on probation under the statute

during the plea hearing. (Resp. Ex. A at 19-20.) During his first 120 days in prison, petitioner accrued a conduct violation when he was found passing a stamped envelope to another offender. (Resp. Ex. F. at 7.) Based on this violation and an interview with him, the DOC recommended to the court that petitioner not be released on probation. (Id. at 7–9.) Following the recommendation, the court sentenced petitioner to serve the remainder of his sentence. (Id. at 12.)

Accordingly, Ground 4 is without merit.

## VII. RECOMMENDATION

For the reasons set forth above,

**IT IS HEREBY RECOMMENDED** that the petition of Jay Lee Ramsey for a writ of habeas corpus be denied.

The parties are advised that they have 14 days to file written objections to this Report and Recommendation. The failure to file timely written objections may waive the right to appeal issues of fact.

     /S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on January 4, 2016.